UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AK TOURNAMENT PLAY, INC. and AL
OTTO,

                 Plaintiffs,          09 Civ. 10579 (LAP)

        -v.-                     MEMORANDUM AND ORDER

TOWN OF WALLKILL; EUGENE JACQUES,
individually and in his capacity
as building inspector for the Town
of Wallkill; WALTER BARRETT,
individually and in his capacity
as assistant building inspector
for the Town of Wallkill; JOHN
WARD, individually and in his
capacity as supervisor for the
Town of Wallkill,

                 Defendants.

---

LORETTA A. PRESKA, Chief United States District Judge:

     AK Tournament Play, Inc. and Al Otto (collectively,

"Plaintiffs") commenced this action against the Town of Wallkill

("Town"), Town of Wallkill Building Inspector Eugene Jacques

("Jacques"), Town of Wallkill Assistant Building Inspector

Walter Barrett ("Barrett"), and Town of Wallkill Supervisor John

Ward ("Ward") (collectively, "Defendants"), in their individual

and official capacities, seeking monetary damages and attorney's

fees.  Plaintiffs allege that by interfering with their

Tournament Style Texas Hold-em events, Defendants have allegedly

violated their First Amendment right to "freedom of

association."   Additionally, Plaintiffs allege that Defendants

conspired to prevent Plaintiffs from playing Tournament Style

Texas Hold-em.[1]   Defendants seek dismissal pursuant to Federal

Rule of Civil Procedure 12(b)(6) on the grounds that the there

is no constitutional right to play or associate for the purposes

of playing Texas Hold-em.   Additionally, Defendants argue that

Plaintiffs have failed to plead facts sufficient to allege a

§ 1983 conspiracy.   For the following reasons, Defendants'

motion to dismiss [dkt. no. 11] is GRANTED in its entirety.

I.   BACKGROUND

Plaintiff AK Tournament Play, Inc., ("AKTP" or the "Poker

Club") is a not-for-profit corporation organized in 2005 under

the laws of the State of New York as a "non-profit membership

club to pursue recreational Tournament Style Texas Hold-em."

(Compl. ¶¶ 11-13.)[2]   Plaintiff Al Otto is the President of the

---

[1] The Table of Contents of Plaintiffs' Opposition to Defendants'
Motion to Dismiss also includes several state law claims that
appear to have been mistakenly copied from another unrelated
brief.   Because these claims do not appear anywhere in
Plaintiffs' Complaint, the Court will disregard them.

[2] A court may take judicial notice of well known facts that are
not subject to any reasonable dispute.   See Lieberthal v. North
Country Lanes, Inc., 221 F. Supp. 685, 687 (S.D.N.Y. 1963)
(taking judicial notice of the recreational nature of bowling;
see generally Fed. R. Evid. 201(b)(2) (courts may take judicial
notice of any fact "not subject to reasonable dispute in that it
is . . . capable of accurate and ready determination by resort
to sources whose accuracy cannot reasonably be questioned").
Although Plaintiffs' Complaint repeatedly characterizes the
(cont'd on next page)

Poker Club.  (Id. ¶ 4.)  On December 6, 2005, AKTP was approved
as a tax exempt organization pursuant to Internal Revenue Code
501(c)(7).  (Id. ¶ 13.)  In November, 2006, AKTP leased
commercial space on the second floor of a commercial building
located in Wallkill, New York, and began hosting poker
tournaments.  (Id. ¶ 14.)

    At its apex, the Poker Club included approximately 130
members.  (Id. ¶ 21.)  On or about February 7, 2007, Defendants
allegedly entered the Poker Club premises and attempted to
condemn that portion of commercial space occupied by the Poker
Club.  (Id. ¶¶ 15-16.)  The condemnation attempt was
unsuccessful.  Thereafter, Plaintiffs also allegedly engaged in
unspecified "threatening and coercive conduct" towards plaintiff
and members of the Poker Club.  (Id. ¶ 19.)  Subsequently, club
membership declined to fewer than 50 members, and the Poker Club
discontinued its activities.  (Id. ¶ 21.)  This litigation
ensued.[3]

---

(cont'd from previous page)
activities at issue only as "Tournament Style Texas Hold-em
play," the Court calls Plaintiffs' bluff and takes judicial
notice that "Texas Hold-em" is in fact a variation of the common
card game of poker.  See Mark Harlan, Texas Hold'em For Dummies
9 (2006).

[3] The parties dedicate considerable text in their respective
briefs to arguing whether Plaintiffs' alleged "gambling"
activities are legal.  While the Court takes no position on this
(cont'd on next page)

II.  ANALYSIS

    a. Legal Standard For Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. (citing Twombly, 550 U.S. at 555).  Similarly, "naked assertion[s]" devoid of "further factual enhancement" will not suffice.  Id. (alteration in original) (citing Twombly, 550 U.S. at 557).

To be plausible, a plaintiff's factual allegations must demonstrate "more than a sheer possibility that a defendant has acted unlawfully" and that the plaintiff's claim is more than merely "conceivable."  Iqbal, 129 S. Ct. at 1949, 1951.  In evaluating the plaintiff's claims, a district court must accept the factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

---

(cont'd from previous page)
issue generally, for the purpose of this motion only, the Court assumes that Plaintiffs' poker tournaments are permissible.

4

The district court is not required "to accept as true a legal
conclusion couched as a factual allegation."  Iqbal, 129 S. Ct.
at 1949-50 (citation and quotation marks omitted).

In considering a motion to dismiss for failure to state a
claim, the district court is limited to the facts stated in the
complaint, documents attached to the complaint as exhibits,
documents incorporated by reference in the complaint, and
documents integral to the complaint that are not incorporated
into it by reference.  See Chambers, 282 F.3d at 152-53.

b. Plaintiffs' § 1983 Claims

i. Freedom of Association

42 U.S.C. § 1983 provides that no person may deprive
another, under color of state law, of rights secured by the
Constitution or the laws of the United States.  See 42 U.S.C.
§ 1983.  Section 1983 itself does not provide substantive rights
but rather offers a means of vindicating federal rights
conferred elsewhere.  See Patterson v. Cnty. of Oneida, 375 F.3d
206, 225 (2d Cir. 2004).  Additionally, a claim under § 1983
requires "personal involvement of defendants in alleged
constitutional deprivations."  Back v. Hastings on Hudson Union
Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004) (citation
omitted).

Plaintiffs' § 1983 claim is predicated on alleged
violations of the Free Association Clause of the First

5

Amendment.   The Supreme Court has identified two types of

"freedom of association" that merit constitutional protection:

(i) "choices to enter into or maintain certain intimate human

relationships" and (ii) association "for the purpose of engaging

in those activities protected by the First Amendment." <u>Roberts</u>

<u>v. United States Jaycees</u>, 468 U.S. 609, 617-18 (1984); <u>accord</u>

<u>Sanitation & Recycling Indus., Inc. v. City of New York</u>, 107

F.3d 985, 995-96 (2d Cir. 1997).[4]   "These categories cannot be

stretched to form a generic right to mix and mingle."  <u>URI</u>

<u>Student Senate v. Town of Narragansett</u>, --- F.3d ----, 2011 WL

17610, at *8 (1st Cir. Jan. 5, 2011).

    Plaintiffs argue that Defendants "deter[ed] them from

freely associating for the purposes of engaging in lawful

activities . . . to wit: providing a forum and associating with

individuals desiring to engage in Tournament Style Texas Hold-em

play."  (Compl. ¶¶ 14, 19.)  But "[t]he constitutionally

protected right of association cannot be reinvented to suit a

plaintiff's fancy.  It has never been expanded to include purely

social gatherings."  <u>URI Student Senate</u>, 2011 WL 17610, at *8.

(noting that such a "free-wheeling right far outstrips the

bounds of recognized First Amendment protections"); <u>see also,</u>

---

[4] The First Amendment applies to the states via the Due Process
clause of the Fourteenth Amendment.  <u>Piscottano v. Murphy</u>, 511
F.3d 247, 268 (2d Cir. 2007) (citation omitted).

e.g., Roberts, 468 U.S. at 620 (business relationships not protected); City of Dallas v. Stanglin, 490 U.S. 19, 25 (1989) ("chance encounters" in dance halls not protected); IDK Inc. v. Clark Cnty., 836 F.2d 1185, 1193-96 (9th Cir. 1988) (paid rendezvous with escort not entitled to First Amendment protection); Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh, 58 F. Supp. 2d 619, 624 (W.D. Pa. 1999), aff'd, 229 F.3d 435 (3d Cir. 2000) (fraternity membership not protected).

Here, Plaintiffs fail to identify or plead with any particularity any of the qualities that would justify affording Plaintiff's recreational poker-playing activities constitutional protection.  Plaintiffs do not allege that Defendants attempted to break up their families or intimate social circles.[5] Plaintiffs also cannot show that their poker-playing should be protected as "expressive association."  See Boy Scouts of Am. v. Dale, 530 U.S. 640, 648 (2000) (group seeking protection must engage in some form of expression).

---

[5] Indeed, Plaintiffs acknowledge that the Poker Club was open to any member of the public who agreed to pay the seventy-five dollar annual membership fee.  (Pls. Opposition at 4.)  This is a far cry from the "relative smallness" and "high degree of selectivity" contemplated by the Roberts Court.  See Stanglin, 490 U.S. at 25.  Nor have Plaintiffs identified any aspect of their poker "relationship" that may have been excluded from the view of others (assuming, of course, that Poker Club members actually admitted that they were going to play poker).

Plaintiffs do not identify, and this Court has been unable to find any cases holding that playing poker is a form of protected expression.[6]  To the contrary, analogous caselaw holds that similar gambling activities – such as playing bingo and betting on jai-alai – do not constitute "expression."  See There to Care, Inc. v. Comm'r of Indiana Dep't of Revenue, 19 F.3d 1165, 1167 (7th Cir. 1994) (bingo and the associated gambling were not protected "speech" because the speech at issue did not "convey ideas"); Allendale Leasing, Inc. v. Stone, 614 F. Supp. 1440, 1454 (D.R.I. 1985) (same), aff'd, 788 F.2d 830 (1st Cir. 1986); Ziskis v. Kowalski, 726 F. Supp. 902, 911 (D. Conn. 1989) (no First Amendment right to gamble on jai-alai or associate with professional gamblers).

The Court finds these cases instructive and concludes that playing poker is no more expressive than playing bingo or betting on jai alai.  Although "[i]t is possible to find some kernel of expression in almost every activity a person

---

[6] Plaintiffs confusingly cite Gibson v. Florida Legislative Investigation Comm., 372 U.S. 539 (1963), for the unremarkable proposition that there is indeed a First Amendment right to free association.  The Court does not disagree.  Gibson, however, held that absent adequate foundation, a legislative investigation designed to identify Communists could not compel the NAACP – a group the Supreme Court had previously determined was engaged in the advancement of specific beliefs and ideas that were protected by the First Amendment — to disclose the identities of its members.  Nothing of the sort is at issue here.

undertakes," this does not mean that every activity warrants First Amendment protection.  <u>Stanglin</u>, 490 U.S. at 25.  Here, as with bingo, any communications that may take place during Plaintiffs' poker tournaments are "singularly in furtherance of the game" and "totally divorced from a purpose of expressing ideas, impressions, feelings or information unrelated to the game itself."  <u>See</u> <u>Allendale Leasing</u>, 614 F. Supp. at 1454. Simply put, Plaintiffs' discussions of whether to "hold 'em" or "fold 'em"[7] are not protected by the First Amendment.

ii. Conspiracy

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act in furtherance of that goal causing damages."  <u>Pangburn v. Culbertson</u>, 200 F.3d 65, 72 (2d Cir. 1999).  Thus, absent an underlying constitutional violation on which to base a § 1983 conspiracy claim, a plaintiff's conspiracy claim fails as a matter of law. <u>See</u> <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 72 (2d Cir. 2001); <u>Singer v. Fulton Cnty. Sheriff</u>, 63 F.3d 110, 119 (2d Cir. 1995).  To survive a motion to dismiss, a conspiracy claim must contain more than "conclusory, vague or general allegations of

---

[7] Kenny Rogers, <u>The Gambler</u>, <u>on</u> The Gambler (Capitol Nashville 1978).

conspiracy to deprive a person of constitutional rights." Romer

v. Morgenthau, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)

(citation omitted). A plaintiff must allege facts that

plausibly suggest a "meeting of the minds" and provide some

details of time and place. Id.

Here, Plaintiffs' § 1983 conspiracy claims against all

Defendants must be dismissed because Plaintiffs have failed to

allege any violation of any cognizable constitutional right.

Even if Plaintiffs had alleged an actual violation of a

constitutional right, Plaintiffs' Complaint is still deficient

with respect to Jacques, Barrett and Ward because it fails to

plead any facts that would point to the existence of any

"meeting of the minds" between the town employees to deprive

Plaintiffs of any constitutional right. See Romer, 119 F. Supp.

at 363; see also Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir.

1997) (dismissing "unsupported, speculative, and conclusory"

claim of conspiracy). Further, absent allegations that Jacques,

Barrett and Ward conspired with other individuals not employed

by the Town, claims against them are also barred by the

intracorporate conspiracy doctrine. See Farbstein v. Hicksville

Pub. Library, 254 F. App'x 50, 51 (2d Cir. 2007) (affirming

dismissal of conspiracy complaint that only referenced employees

of same corporation) (citing Herrmann v. Moore, 576 F.2d 453,

459 (2d Cir. 1978)); Rini v. Zwirn, 886 F. Supp. 270, 292

(E.D.N.Y. 1995) (extending intracorporate immunity to alleged "conspiracies between a public entity and its employees").

Finally, with respect to the Town of Wallkill, Plaintiffs' Complaint also fails because it is devoid of any allegations regarding any unlawful policy, custom, or practice by the municipality. See Monell v. Dep't of Social Services of City of New York, 436 U.S. 658, 691 (1978).

III. CONCLUSION

The Court concludes that Plaintiffs' generalized desire to congregate and socialize for the purpose of playing poker is far outside the bounds of recognized First Amendment protection. See Roberts, 468 U.S. at 618. For the foregoing reasons, Defendants' motion to dismiss [dkt. no. 11] is GRANTED in its entirety. The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED.

Dated:    New York, New York
          January **19**, 2011

Loretta A. Preska, Chief U.S.D.J.

11